·Diep **BURBRIDGE, et al., Plaintiffs,**

v.

Cedric **SAMPSON, et al., Defendants.**

**No. CV 99–9482 ABC(MCx).**

United States District Court, C.D. California.

Sept. 29, 1999.

---

Carol Sobel, Santa Monica, CA, Dilan Esper, Los Angeles, CA, for plaintiffs.

Allan E. Wilion, Wilion, Kirkwood & Kessler, Beverly Hills, CA, for defendants.

### ORDER RE: PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION

COLLINS, District Judge.

Plaintiffs' application for a preliminary injunction came on regularly for hearing before this Court on September 27, 1999. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Plaintiffs' application is GRANTED with MODIFICATIONS.

## I. Background

In the spring of this year, defendant South Orange County Community College District Board of Trustees (the "Board") enacted Board Policy 5406 ("BP 5406" or the "Policy"), regulating the time, manner and place of speech and advocacy on campus by students and members of the public.[1] Among other things, BP 5406 sets forth a reservation system for "preferred areas," defined as "[s]pecific areas and properties available for public meetings with expected gatherings of 20 or more

persons, and where amplification is permitted." BP 5406 IV.B. The preferred areas identified in BP 5406 do not include the area in front of the Student Services Center ("SSC"), a popular and strategically located area for speech and advocacy activities which students and members of the public, including the plaintiffs in this case, previously utilized. *See* Compl. ¶¶ 12–14.

On August 31, 1999, around the beginning of the fall semester, Plaintiffs Diep Burbridge, Scott Stephansky and Dorothy Caruso, students at Irvine Valley College (the "College"), one of the community colleges within the South Orange County Community College District (the "District"), filed a complaint seeking declaratory and injunctive relief. Plaintiffs allege that BP 5406 is facially unconstitutional under both California and federal laws.[2] Plaintiffs seek a declaratory judgment that (1) "the college's policy of restricting student speech and advocacy is an impermissible prior restraint on protected expression";[3] (2) BP 5406 "is a content-based set of regulations, causing it to fail to satisfy the stringent test for a reasonable time, place and manner regulation"; and (3) BP 5406 "suffers constitutional infirmity on the grounds that it is both vague and overbroad."[4] Compl. ¶ 4.

---

1. The parties submitted two versions of the Policy, each purporting to be the version "Revised: 4–26–99." *See* Burbridge Decl., Ex. "A" at 8; Sampson Decl., Ex. "A" at 8. After close examination, the Court believes that the version submitted by Defendants is an earlier draft (and should be disregarded) and the one submitted by Plaintiffs is the final version. First, Defendants' version does not contain the "Amplification" provision (*see* Burbridge Decl., Ex. "A" at 2 [section III.C]), which defines when and where amplification is permitted on campus, one of the matters at issue in this action. Second, Defendants' Opposition acknowledges a section "III(C)," that explains that "amplification is permitted in preferred areas at times when classes are not in session." Opp. at 16 n. 14. This only makes sense if one refers to the version submitted by Plaintiffs. Third, page eight of Defendants' version mistakenly lists "A," "B," "C," "D" and "E" section headings, when it appears clear that those headings should be "H," "I," "J," "K." *See* Sampson Decl., Ex. "A" at 7–8 (section "G" begins on the bottom of page

seven and ends on top of page eight; the next heading should be "H").

2. Plaintiffs sued two other defendants. Defendant Cedric Sampson is the Chancellor of the District and the individual designated by the Board with overall authority to implement BP 5406. Compl. ¶ 9. Appeals of the denials of any requests to speech, posting and distribution activities pursuant to BP 5406 should be made to Mr. Sampson. *Id.* Defendant Raghu Mathur is the president of the College and the primary campus official responsible for enforcing BP 5406. He has authority to grant or deny requests made by the students pursuant to BP 5406.

3. Plaintiffs argue that the following provisions demonstrate that BP 5406 is invalid on this ground: Sections IV.B, IV.D, IV.J, IV.K, V, V.J and V.K. Motion at 9–11.

4. Plaintiffs argue that the following provisions of BP 5406 are overbroad and vague: (1) BP 5406 III.A (vague); (2) BP 5406 III.E (vague);

On August 31, 1999, Plaintiffs also filed a motion for a temporary restraining order ("TRO") and an order to show ("OSC") cause why a preliminary injunction should not issue. Plaintiffs argue that Defendants should be enjoined from enforcing BP 5406. On September 2, 1999, the Court denied the request for a TRO but issued the OSC.[5] On September 13, 1999, Defendants filed their response to the OSC (the "Opposition"). On September 16, 1999, Plaintiffs filed their reply (the "Reply").

## II. Discussion

### A. Standing

■ As a threshold matter, the Court must examine whether Plaintiffs having standing to raise their facial challenges. Article III standing contains three elements: (1) "an injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) likelihood that the injury will be " 'redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ The first element of the standing inquiry—the injury in fact—is "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) 'actual or imminent, not conjectural' or 'hypothetical.' " *Id.* at 560, 112 S.Ct. 2130 (citations omitted). A plaintiff must show that " 'he has sustained or ·is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.' " *4805 Convoy, Inc. v. City of San Diego,* 183 F.3d 1108, 1111–12 (9th Cir. 1999) (quoting *City of Los Angeles v.*

*Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). "Thus, a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights *or interests* of third parties.' " *Id.* at 1112 (quoting *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) ("*Munson*")).

When a case concerns a challenge that a statute or ordinance is, on its face, unconstitutional, particularly in the First Amendment context, the type of facial challenge at issue affects the standing analysis.[6] While the plaintiff must still demonstrate an injury in fact, plaintiff may assert not just his own constitutional rights, he may also assert the constitutional rights of others. *Id.*

■ A statute may be facially unconstitutional if (1) " 'it is unconstitutional in every conceivable application' " or (2) " 'it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad.' " *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir.1998) (quoting *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)).[7] The first type of facial challenge involves a plaintiff who argues that the statute "could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity." *Id.* In such a case, courts apply the general rule that a plaintiff has standing only to vindicate his own constitutional rights,

(3) BP 5406 IV. D (vague); and (4) BP 5406 V (opening para.) (vague and overbroad). Motion at 12–17.

5. Since the OSC issued, the parties and the Court, have treated Plaintiffs' Memorandum of Points and Authorities in Support of Temporary Restraining Order as Plaintiffs' brief in support of their application for a preliminary injunction (the "Motion").

6. School regulations, not statutes or ordinances, are at issue in this action. Other than some minor distinction, Defendants concede that cases concerning the constitutionality of statutes or ordinances are applicable here. *See* Opp. at 2.

7. "A successful challenge to the facial constitutionality of a law invalidates the law itself." *Foti,* 146 F.3d at 635; *accord Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("A 'facial' challenge ... means a claim that the law is 'invalid in toto—and therefore incapable of any valid application' ").

rights that have been, or are in imminent danger of, being invaded by the government's implementation or enforcement of that statute. *See id.; cf. FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 220–21, 237, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ("There can be little question that the motel owners have 'a live controversy' against enforcement of [a] statute" that regulates adult motels and other "sexually oriented businesses").

■ However, an exception to the traditional standing rule applies in the First Amendment context when a plaintiff raises the second type of facial challenge. *Foti,* 146 F.3d at 635. In this type of challenge, "the plaintiff argues that the statute is written so broadly that it may inhibit the constitutionally protected speech of third parties." *Id.; accord Munson,* 467 U.S. at 956–57, 104 S.Ct. 2839. In such a case, the general limitation on standing is relaxed because there exists "a danger of chilling free speech" in society as a whole. *Munson,* 467 U.S. at 956–57, 104 S.Ct. 2839. Thus, so long as the plaintiff himself satisfies the injury in fact requirement, he has standing to argue that a law is facially overbroad as it relates to the expressive activities of others, whether or not he also challenges the law's overbreadth as it relates to his own expressive activities. *See id.* (a for-profit professional fund raiser who contracts with charitable organizations has standing to challenge a statute that prohibits charitable organizations from paying or agreeing to pay as expenses more than 25 percent of the amount raised in connection with any fundraising activity); *see also S.O.C., Inc. v. County of Clark,* 152 F.3d 1136, 1142–43, *amended on other grounds,* 160 F.3d 541 (9th Cir.1998) (plaintiff, whose First Amendment activities are directly impacted by the new ordinance, has standing to challenge the impact of the overbroad ordinance on behalf of itself and others not before the court). The "prior restraint" cases, where one who is subject to the law

alleges that a licensing statute vests unbridled discretion in the decision-maker over whether to permit or deny the expressive activity, fall into this category. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (discussing cases where a plaintiff has standing to bring facial overbreadth challenges, including prior restraint and unreasonable time, place and manner claims, "not because his own rights have been violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression"); *see also Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) ("In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license"); *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (same).

■ Here, as set forth above, both types of facial challenges are at issue. Also, it is undisputed that BP 5406 regulates the on-campus speech and expressive activities of students and non-district members. Before Plaintiffs can post or distribute written materials, or engage in speech and advocacy on school grounds, Plaintiffs must comply with the requirements and restrictions of BP 5406. BP 5406, as written, could possibly prevent Plaintiffs from engaging in certain constitutionally protected activities or restrict their manner of expression. A favorable decision by this Court, enjoining the enforcement of BP 5406, will likely redress Plaintiffs' injuries. Under the facts as alleged,[8] Plaintiffs have demonstrated that

---

8. To determine standing at the pleading stage, the Court may rely upon general factual allegations of injury resulting from the defendant's conduct. *See Lujan,* 504 U.S. at 561, 112 S.Ct. 2130.

they are immediately in danger of sustaining some direct injury as a result of the implementation of the provisions at issue in this case, *with the exception* of BP 5406 IV.D ("Use by Non–District Persons").[9] Accordingly, the Court is satisfied that Plaintiffs have standing.[10] The Court, therefore, has jurisdiction to address the merits of Plaintiffs' application for a preliminary injunction.[11]

## B. Standard for Preliminary Injunction

■ In the Ninth Circuit, preliminary injunctive relief is appropriate when the moving party demonstrates "either (1) a

---

9. BP 5406 IV.D provides: "District property may be used by non-district individuals and organizations for commercial purposes only with the prior approval of the President or designee and with the provisions that such activities do not interfere with the normal functioning of the district. Any such permitted use shall be based upon benefit to the district." Plaintiffs challenge BP 5406 IV.D on the grounds that (1) the phrase "based upon benefit to the district" is unconstitutionally vague; (Motion at 16–17) and (2) it constitutes an invalid prior restraint on non-district individuals and organizations' expressive activities (Motion at 10). Plaintiffs lack standing to challenge BP 5406 IV.D on these grounds as the provision impacts the rights or interests of third parties who are non-district members. Plaintiffs have not shown that they have or will suffer an injury in fact as a result of BP 5406 IV.D's implementation. Therefore, the Court will not address challenges against BP 5406 IV.D.

10. Defendants argue that Plaintiffs have suffered no direct injury and therefore can only challenge BP 5406 on overbreadth grounds if the policy is "substantially overbroad," a condition that Plaintiffs allegedly cannot satisfy. *See* Opp. at 1–2. Defendants cite a Third Circuit case, *San Filippo v. Bongiovanni*, 961 F.2d 1125 (3d Cir.1992), in support of this argument. *See* Opp. at 1 n. 1. This contention is untenable.

First, Defendants' reliance on *San Filippo* is misplaced. *San Filippo* does not concern the First Amendment right to freedom of speech nor its state counterpart. There, the plaintiff argued that the university's regulations for dismissing tenured professors violated his Fifth and Fourteenth Amendment due process right to fair notice. *Id.* at 1126. The "sole question" before the court was whether the regulations were void for vagueness. *Id.* Second, Defendants are wrong to suggest that Plaintiffs cannot raise overbreadth challenges, even to the extent that BP 5406 affects Plaintiffs' own protected activities, merely because Plaintiffs have not shown that they have attempted to comply with BP 5406 (and presumably have been prevented from engaging in protected activities, *i.e.*, Plaintiffs have not shown the existence of an injury. *See* Opp. at 1 & 3. As the cases cited above amply demonstrate, Plaintiffs do not need to wait until they have applied for, and been denied, approval to engage in activities regulated by BP 5406 before having standing to bring this action. *See, e.g., City of Lakewood*, 486 U.S. at 755–56, 108 S.Ct. 2138; *Village of Hoffman Estates*, 455 U.S. at 493, 102 S.Ct. 1186 ("instead of applying for a license or seeking clarification via the administrative procedures that the village had established for its licensing ordinances," plaintiff filed lawsuit); *S.O.C.*, 152 F.3d at 1140–41 (suit filed immediately after passage of ordinance prohibiting off-premises canvassing in certain areas).

Finally, while the overbreadth doctrine might, "[a]s a practical matter," be characterized "as a standing doctrine," (*San Filippo*, 961 F.2d at 1135 n. 14), "[t]he requirement that a statute be 'substantially overbroad' before it will be struck down on its face is a 'standing' question *only to the extent* that if the plaintiff does not prevail on the merits of its facial challenge and cannot demonstrate that, as applied to it, the statute is unconstitutional, it has no 'standing' to allege that, as applied to others, the statute might be unconstitutional" (*Munson*, 467 U.S. at 958, 104 S.Ct. 2839 (rejecting defendant's argument that plaintiff should not have standing to challenge the statute as overbroad because it has not demonstrated that the statute's overbreadth is "substantial") (emphasis added)). That situation is not before the Court.

11. Defendants, citing *Nixon v. Adm'r of General Servs.*, 433 U.S. 425, 428, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), assert that it would be improper for this Court to review this challenge before the District has had an opportunity to interpret and apply BP 5406 to Plaintiffs. Opp. at 12–13. Defendants' argument has no merit. As the Reply correctly states, *Nixon* neither concerns the First Amendment right to free speech nor stands for the proposition cited by Defendants. *See* Reply at 11. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) and *Franklin v. Leland Stanford Junior Univ.*, 172 Cal.App.3d 322, 324, 218 Cal.Rptr. 228, 244 (1985), also cited by Defendants, do not support their argument.

combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Chalk v. United States Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir.1988) (citing *Los Angeles Memorial Coliseum Comm'n v. Nat. Football League*, 634 F.2d 1197 (9th Cir.1980)). " 'These are not separate tests, but the outer reaches "of a single continuum" ' " *Id.* Where the moving party satisfies combination (1), above, the Court should also address the claimed injury on the part of the non-moving party, since " 'at least a minimal tip in the balance of hardships must be found even when the strongest showing on the merits is made.' " *Id.* at 710.

## C. Analysis

### 1. State or Federal Constitutional Law

As an initial matter, the Court must address the role of state law in this case. Here, Plaintiffs challenge the validity of BP 5406 on the basis of both the United States Constitution and the California Constitution. The Ninth Circuit follows the doctrine that federal courts "should avoid adjudication of federal constitutional claims when alternative state grounds are available." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391–92 (9th Cir.1994). "Where the state constitutional provisions offer more expansive protection than the federal constitution, [the Court] must address the state constitutional claims in order to avoid unnecessary consideration of the federal constitutional claims." *Id.* at 1392. Thus, "[i]f the California Constitution provides 'independent support' for [Plaintiffs'] claims, then 'there is no need for decision of the federal [constitutional] issue.' " *Carreras v. City of Anaheim*, 768 F.2d 1039, 1042–43 (9th Cir. 1985) (applying California law).

The California Constitution provides, in pertinent part: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. art. I, § 2, *compare* U.S. Const.Amend. 1 ("Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances"). "The California Constitution, and California cases construing it, accords greater protection to the expression of free speech than does the United States Constitution." *Gonzales v. Superior Court of State of California for County of Ventura*, 180 Cal.App.3d 1116, 1122, 226 Cal.Rptr. 164 (1986) (citing *Robins v. Pruneyard Shopping Center*, 23 Cal.3d 899, 903, 907–910, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), among others). The state constitutional provisions are more protective and inclusive of the rights to free speech and press than the federal counterpart. *Id.* at 1123, 226 Cal.Rptr. 164, 180 Cal.App.3d 1116, 226 Cal.Rptr. 164.

While the free speech provisions differ, California courts draw upon both state and federal law for their state constitutional analyses. *See U.C. Nuclear Weapons Labs Conversion Project v. Lawrence Livermore Lab.*, 154 Cal.App.3d 1157, 1163, 201 Cal.Rptr. 837 (1984); *Gonzales*, 180 Cal.App.3d at 1123, 226 Cal.Rptr. 164 (federal law provides guidance). "Federal principles are relevant but not conclusive so long as federal rights are protected." *Robins*, 23 Cal.3d at 909, 153 Cal.Rptr. 854, 592 P.2d 341. "[W]here state law affords greater protection to expression of free speech than federal law, state law prevails." *Gonzales*, 180 Cal.App.3d at 1122, 226 Cal.Rptr. 164. These principles will guide the Court in its analysis of Plaintiffs' constitutional challenges.

### 2. Probability of Success on the Merits

### a. Time, Place and Manner Regulation

#### i. Public Forum

There is no doubt that the fora at issue—the facilities and areas on campus

which the college has made generally available for use by students and the community at large, including, *inter alia,* the area in front of the SSC [12]—have been opened to the public. *See* BP 5406 III.A ("[t]he district is committed to assuring that all persons may exercise constitutionally protected rights of free expression [and] speech" on campus); Cal.Educ.Code § 82537 ("[t]here is a civic center at each and every community college within the state where the citizens . . . may meet and discuss, from time to time, as they may desire, any subjects and questions . . ."); *see also Widmar v. Vincent,* 454 U.S. 263, 267–69, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (treating university facilities as designated public fora where the university had opened its facilities for use by student groups). Once the state elects to open a forum to the public for expressive activities, the state may establish and enforce " 'reasonable time, place and manner regulations' " as long as they (1) are content-neutral, (2) are narrowly tailored to serve a significant governmental interest, and (3) leave open ample alternative channels of communication. *Gonzales,* 180 Cal.App.3d at 1125, 226 Cal.Rptr. 164 (concerning both state and federal constitutions but quoting *United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983)); *accord Robins,* 23 Cal.3d at 909, 153 Cal. Rptr. 854, 592 P.2d 341 ("property owners as well as government may regulate speech as to time, place and manner"); *Savage v. Trammell Crow Co.,* 223 Cal. App.3d 1562, 1572, 273 Cal.Rptr. 302 (1990) (noting that the California Supreme Court, "[i]n giving private property owners the right to establish 'time, place and manner' rules, . . used the same formulation it had employed in describing the power government possesses with respect to public

forums and the conduct of activities protected by the First Amendment").[13]

■ Any policy regulating protected speech and advocacy activities in a public (or designated public) forum, "which is 'based upon the content of speech'[,] requires strict scrutiny." *U.C. Nuclear Weapons Labs,* 154 Cal.App.3d at 1170, 201 Cal.Rptr. 837 (concerning both state and federal constitutions but quoting *Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 535–36, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980)). This means the state must demonstrate that its content-based regulation " 'is necessary to serve a compelling state interest *and* that it is narrowly drawn to achieve that end.' " *Foti,* 146 F.3d at 635 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)) (emphasis added).

### ii. Content–Based Restrictions

BP 5406 attempts to regulate speech and other expressive activities via a reservation system akin to a licensing scheme. For example, section IV.C provides:

Use of district property *must be scheduled* through the President or designee on each campus. The sponsoring student or group is responsible for adherence to guidelines, policies, or restrictions that may pertain to specific facilities.

BP 5406 IV.C (emphasis added). When an audience of more than 20 persons is anticipated, section IV.B provides that "[s]pecific areas and properties available for [use] . . . and where amplification is permitted[ ] *are assigned* by the President or designee on a first come, first served basis." BP 5406 IV.B (emphasis added). "A request for use of . . . district property . . . *shall be*

---

12. *See* Compl. ¶¶ 12–19. Plaintiffs have not argued, and the Court does not construe, that campus facilities not generally available for use by the students or the community—*e.g.,* the Chancellor's office—fall within the forum at issue in this action. *See* BP 5406 III.A. (the policy applies to "district grounds open to the public generally").

13. The Court notes that the District recognizes that it can regulate speech and other protected expressive activities via BP 5406 only if it does so in a content-neutral manner. *See, e.g.,* BP 5406 IV.K (on appeal, "the Chancellor shall recognize that the district bears the burden of showing . . . that any restrictions applied by the district . . . [i]s [sic] content-neutral").

*denied* if the use" violates certain restrictions. BP 5406 IV.J (emphasis added).[14] Similarly, no one may post or distribute written materials without obtaining prior approval. *See* BP 5406 V.B, V.J & V.K.[15]

■ On its face, BP 5406 distinguishes between "commercial" and "noncommercial" speech/activities and gives preferential treatment to "noncommercial" speech/activities. For example, part IV.F provides that:

> On district grounds open to the public generally, all persons may exercise the constitutionally protected rights of free expression, speech ... and distribution and sale of *noncommercial* literature incidental[16] to the exercise of these freedoms.

BP 5406 IV.F (emphasis added).[17] Section V provides that:

> District students and organizations may post and exhibit *noncommercial* materials at locations designated for that purpose. For the purpose of this policy, *noncommercial* literature is defined as any printed material or announcement of any kind in any media or form which refers to an event, activity, or service that is not conducted for private business or personal gain. The posting or distribution of *commercial* literature and materials, other than the occasional/incidental sale of personal property of interest to district students, faculty, and staff, is prohibited.

BP 5406 V (opening para.) (emphasis added). Moreover, section V.J.3. provides a general ban on the posting or distribution on campus of *all* "commercial" materials. *See* BP 5406 V.J.3.[18]

■ Contrary to Defendants' contention, BP 5406 is obviously a content-based policy.[19] *See Foti*, 146 F.3d at 636 (" 'As a general rule, laws that by their terms distinguish favored speech from disfavored

---

14. One whose request to use district property has been denied by school officials may appeal the request in writing. BP 5406 IV.K.

15. Defendants' counsel either did not read the policy or chose to blatantly misrepresent to this Court that "[t]here is *no* provision in the Policy for the District to prevent publication or to review materials in advance for approval or disapproval on the basis of their content" and that use of "preferred areas" is " 'assigned ... on a first come, first served basis,' with no other approval or review involved." *See* Opp. at 13 & n. 3 (original emphasis). BP 5406 IV.B, IV.C, IV.J and IV.K, when read together, clearly contemplate and proscribe a request and denial system of reservation for use of district property, whether the property is "preferred" or not preferred. Also, BP 5406 V.B, V.J and V.K, when read together, clearly contemplate and proscribe an advance approval system to obtain the necessary "date stamp," which constitutes permission to post or distribute the written materials.

16. The Court notes that the term "incidental" in this context—meaning "occurring along with"—appears to differ in meaning from the "incidental" used in BP 5406 V (opening paragraph)—which may mean "once in a while." This undermines Defendants' argument that the terms "incidental" and "occasional" referenced in BP 5406 V are clear and obvious to people with ordinary intelligence. *See* Opp. at 10.

17. Presumably, the sale of noncommercial literature *not* incidental to a particular exercise of constitutionally protected freedoms or the sale of commercial literature would be prohibited on "grounds open to the public generally." *But see* BP 5406 IV.D.

18. Where a statute imposes a blanket prohibition against truthful, non-misleading commercial speech, the state bears the burden of demonstrating that (1) the regulation will significantly advance the state's substantial interest and (2) the restriction on speech is no more extensive than necessary. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 499–508, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996).

19. *U.S. v. Kokinda*, 497 U.S. 720, 735, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990), the only case Defendants cite in support of this assertion, is inapposite. In *Kokinda*, the Court held that the postal sidewalk in question was a nonpublic forum and proceeded to analyze the constitutionality of the regulation under the test for nonpublic forums: "It must be reasonable and 'not an effort to suppress expression merely because public officials oppose the speaker's view.' " *Id.* at 730, 110 S.Ct. 3115. "Indeed, '[c]ontrol over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.' " *Id.* As set forth above, a different test applies in this case.

speech on the basis of the ideas or views expressed are content based'"); *S.O.C.*, 152 F.3d at 1145 ("A speech restriction is content-neutral if it is 'justified without reference to the content of the regulated speech'"); see also *Alternatives for Cal. Women, Inc. v. County of Contra Costa*, 145 Cal.App.3d 436, 448 n. 7 & 449, 193 Cal.Rptr. 384 (1983) (ordinance is content-based wherein it " 'distinguishes between speech merely conveying information on the one hand and speech conveying information in conjunction with a request for funds or contributions on the other'"). "By distinguishing between commercial and noncommercial forms of expression, the [Policy] is content-based." *S.O.C.*, 152 F.3d at 1145; *accord City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (city's ban on the use of newsracks that distribute "commercial handbills" is content-based "by any commonsense understanding of the term" because "whether any particular newsrack falls within the ban is determined by the content of the publication resting inside that newsrack").

BP 5406 is also content-based because, for example, the designated school official must read the contents of the message of the literature proposed for distribution in order to determine whether non-exempt commercial literature—"commercial literature ... *other than the occasional/incidental* sale of personal property of interest to district [members]"—is at issue. BP 5406 V (opening para.) (emphasis added); *see Foti*, 146 F.3d at 636. Similarly, the District's regulation of "noncommercial" speech is content-based, as BP 5406 re-. quires that school officials review proposed "noncommercial" materials to see if it falls within the allowable types of noncommercial material—"printed material or announcement of any kind ... *that is not conducted for private business of personal gain*." BP 5406 V (opening para.) (emphasis added); *see Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814, 820 (9th Cir.1996) ("Because the ex-

emptions require City officials to examine the content of noncommercial off-site structures and signs to determine whether the exemption applies, the City's regulation of noncommercial speech is content-based").

▪ Because the provisions at issue are content-based, Defendants must demonstrate that they are necessary to further a compelling interest and that they are narrowly drawn to achieve that end. *See Foti*, 146 F.3d at 635. Defendants have failed to make such a showing. Defendants identify only two purported "substantial" interests in their opposition papers: the District's interest in (1) " 'promoting an educational rather than commercial atmosphere on [its] campuses, promoting safety and security, [and] preventing commercial exploitation of students'" and (2) "preventing fraud and harassment of students and employees." Opp. at 9. While these interests may be substantial or even compelling, Defendants do not explain how the content-based regulations further these interests. Defendants also fail to explain, and the Court cannot fathom, how these regulations are narrowly drawn to achieve those interests. Indeed, the Opposition is silent on these elements. *See, e.g.,* Opp. at 14–16. Based on the record before the Court at this time, the Court finds that Plaintiffs are likely to succeed on the merits on these challenges.

### iii. Content–Neutral Regulations

In sections III and IV, dealing with "preferred areas" for speaking activities on campus, BP 5406 does not, on its face, distinguish between "commercial" and "noncommercial" speech, insofar as the regulations apply to students and district members. These provisions simply restrict the locations where students (and others) can hold "public meetings with expected gatherings of 20 or more persons" *and* "where amplification is permitted." [20] BP 5406 IV.B. Only three preferred areas

---

**20.** BP 5406 III.C provides that amplification is permitted only in the "preferred areas"

defined in the Policy. BP 5406 III.C. More-

are identified.[21] Plaintiffs contend that none of these "preferred" areas meet the requirement of "ample alternatives for communication" as they, *inter alia,* do not include the historically popular and most strategic location on campus, the area in front of the SSC. *Id.;* Motion at 19.[22]

Defendants argue that Plaintiffs' speaking activities are not limited to the "preferred areas," for the "grounds open to the public" as defined in section IV.A are open to the students. Opp. at 15–16.[23] Defendants also argue that "no advance reservation is required by anyone" to engage in lawful speech activities on the "grounds open to the public" and suggest that the area in front of the SSC falls within this category. *See* Opp. at 13 n. 1 & 16. The Court disagrees.

■ First, the Policy clearly provides that *all* use of district property, whether in "grounds open to the public" or the "preferred areas," "must be scheduled through the President or designee on each campus." BP 5406 IV.C. Without an advance reservation system, organizing speech and advocacy activities on campus would prove chaotic. Second, section IV. A., the "grounds open to the public" provision, simply defines that term, and prohibits certain activities. It does not specifically permit its use for meetings. A commonsense reading of sections IV.A. and IV.B indicates that the District intends to restrict public meetings and student gatherings, wherein 20 or more persons are anticipated to participate, to the three "preferred areas."

Moreover, the "preferred areas" are the only places on campus, according to the Policy, where amplification equipment is allowed. When a large gathering is expected, those engaged in speech and advocacy activities understandably want and need amplification equipment to ensure their message is heard by their intended audience. In this respect, Defendants have not articulated a single interest, much less a significant one, that is advanced by limiting group gatherings of 20 or more persons, and where amplification is required, to the three "preferred areas" listed in the Policy. Defendants also have failed to rebut Plaintiffs' claim that the "preferred areas" do not meet the "ample alternatives for communications" requirement for a reasonable content-neutral time, place and manner regulation. Thus, at this time, the Court finds that Plaintiffs are likely to succeed on the merits of these claims.

### b. Overbreadth

■ Plaintiffs argue that BP 5406 V is unconstitutionally overbroad in its prohibition of the distribution or posting of (1) "any printed material or announcement of any kind ... that is ... conducted for private business or personal gain"[24] and

over, amplification is permitted only "when classes are not in session." *Id.*

**21.** Those areas are: (1) adjacent to the Library, between the Library and the SSC; (2) Quad A; and (3) Quad B. BP 5406 IV.B.1. Section IV.B.2 concerns "preferred areas" for Saddleback College, another community college in the District, and is not at issue in this case.

**22.** The Court notes that Plaintiffs filed a supporting declaration that complains at length about the Policy's restrictions on the size of banners and the locations for the posting of signs and other written materials. *See* Burbridge Decl., ¶¶ 12–13, 16–18. However, these complaints raise only as-applied challenges. In fact, Plaintiffs' moving papers do not challenge the facial validity of sections V.D, V.F & V.G., which sets forth size and

place restrictions for banners, flyers, etc. Accordingly, those provisions are not addressed herein.

**23.** Under BP 5406 IV.A, " 'grounds open to the public' *are defined as the outdoors areas of the campus (lawns, patios, plazas) that are at least 20 feet from the entrances/exits of campus buildings and parking lots, and that do not restrict movement on campus walkways and are also a safe distance from the curbs of campus roads...."*

**24.** "Noncommercial" materials may be distributed and posted but "noncommercial" material is defined as "any printed material or announcement of any kind ... that is *not* conducted for private business or personal gain." BP 5406 V (opening para.) (emphasis added).

(2) any " 'commercial' literature ... other than the occasional/incidental sale of personal property of interest to district students, faculty, and staff." The Court agrees. As written, BP 5406 V prohibits "fully protected [noncommercial] speech that is 'inextricably intertwined' with commercial speech." *S.O.C.*, 152 F.3d at 1143 (plaintiffs demonstrate probable success on the merits of claim that the ordinance is overbroad where it, *inter alia*, fails to limit its restriction to those materials that do " 'no more' than propose a commercial transaction"); *cf. Perry v. Los Angeles Police Dept.*, 121 F.3d 1365, 1367–68 (9th Cir.1997), *cert. denied*, 523 U.S. 1047, 118 S.Ct. 1362, 140 L.Ed.2d 511 (1998) (the sale of "music, buttons, and bumper stickers bearing political, religious, and ideological messages" falls within the category of speech wherein commercial and noncommercial parts of the speech are " 'inextricably intertwined' " and is thus afforded the full protection given to noncommercial speech). For example, as written, BP 5406 V may prohibit the distribution of flyers advocating the need to safeguard individuals' rights to freedom of speech and seeking donations in support of Plaintiffs' pending lawsuit. Similarly, "if [a]

student were to sell t-shirts bearing Thomas Jefferson's words, 'Eternal Vigilance is the Price of Liberty,' " (Motion at 14), as an on-going business to supplement her income, she could be barred from doing so.[25] Based on the above, the Court finds that Plaintiffs are likely to succeed on the merits on their overbreadth claims.[26]

### c. Prior Restraint

Plaintiffs argue that BP 5406 is an impermissible prior restraint on speech and other expressive activities because it (1) establishes a licensing scheme that (2) vests college officials with unbridled discretion to allow or deny the proposed expressive activities and (3) lacks sufficient procedural safeguards. *See* Motion at 9–11. Plaintiffs advance three principal arguments.[27] First, Plaintiffs argue that college officials cannot objectively deny requests for the use of "preferred areas" on the grounds that the use of the property "as it is described in the request violates" certain laws or policies because BP 5406 "does not require that the speaker provide advance information as to the subject matter of the proposed expressive activity." Motion at 10.[28] Second, Plaintiffs argue

25. Assuming "noncommercial" literature as used in BP 5406 IV.F utilizes the definition set forth in BP 5406 V, BP 5406 IV.F shares similar overbreadth problems.

26. Defendants assert that the " ' 'overbreadth doctrine does not apply to commercial speech.' " Opp. at 2 (quoting *Village of Hoffman Estates*, 455 U.S. at 497, 102 S.Ct. 1186) (emphasis omitted). This very argument was rejected by the Ninth Circuit in *S.O.C.*, under similar circumstances. "While the Supreme Court frowns upon facial overbreadth challenges to ordinances that regulate purely commercial speech ... at issue in this appeal is whether the ... Ordinance reaches beyond purely commercial speech to regulate fully protected speech that is 'inextricably intertwined' with commercial speech. Thus, an overbreadth challenge to the ... Ordinance is appropriate." 152 F.3d at 1143 n. 6. Accordingly, Defendants' assertion has no merit.

27. Plaintiffs' fourth argument attacks section IV.D. As previously noted, Plaintiffs have no standing to raise this claim. *See supra* note 8.

28. BP 5406 IV.J provides: "[a] request for use of a preferred area of district property or facilities and/or amplification equipment shall be denied if the use of the property or equipment as it is described in the request violates district policy or local, state, or federal law, or includes expression which is obscene, libelous or slanderous, or which creates a clear and present danger of the commission of unlawful acts on district property or the substantial disruption of the orderly operation of the campus." This provision is apparently based on California Education Code section 76120. *See* Cal.Educ.Code § 76120. ("The governing board of a community college district shall adopt rules and regulations relating to the exercise of free expression by students upon the premises of each community college.... [E]xpression which is obscene, libelous or slanderous *according to current legal standards*, or which so incite students as to create a clear and present danger of ... the substantial disruption of the orderly operation of the community college, shall be prohibited") (emphasis added).

that BP 5406 lacks clearly established objective standards, giving college officials unbridled discretion to determine whether or not speech activities would be allowed. Motion at 10–12. Third, Plaintiffs argue that BP 5406 is an invalid prior restraint because it fails to provide adequate procedural safeguards, such as a provision for "prompt judicial review" of the college official's decisions. Motion at 10–11. Because the Court concludes that the Policy's approval and denial process (set forth in sections IV.J., IV.K, V.J and V.K) fails to provide adequate procedural safeguards, the Court need not reach Plaintiffs' other arguments at this time.

■■■ "A prior restraint exists when the enjoyment of protected expression is contingent upon the approval of government officials." *Baby Tam & Co., Inc. v. City of Las Vegas,* 154 F.3d 1097, 1100 (9th Cir. 1998) (citing *Near v. State of Minnesota ex rel Olson,* 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)). Because BP 5406 requires all students to request and receive approval before engaging in protected expressive activities on campus, the Policy is properly analyzed as a prior restraint. *See id.* "Although prior restraints are not unconstitutional per se, the Supreme Court has repeatedly stated that '[a]ny system of prior restraint' bears a 'heavy presumption against its constitutional validity.'" *Id.* (quoting *FW/PBS,* 493 U.S. at 225, 110 S.Ct. 596).

> It is well established that, to pass constitutional muster, a legislative prior restraint must contain certain procedural safeguards.... A decision to issue or deny a license must be made within a brief, specified and reasonably prompt period of time.... Promptness is essential because undue 'delay compel[s] the speaker's silence' while the applicant awaits a decision.... Unreasonable and indefinite delay is tantamount to the complete suppression of speech.

*Id.* at 1100–01 (citations omitted); *cf. Hillman v. Britton,* 111 Cal.App.3d 810, 819–21, 168 Cal.Rptr. 852 (1980) (discussing First Amendment and due process

challenges) (ordinance governing permits for solicitation invalid on due process grounds because it provided no limitation on the time within which city officials must approve or deny application).

In *FW/PBS,* the Supreme Court invalidated a city licensing ordinance because it ·failed (1) to set a time limit within which needed inspections must occur and (2) to provide an avenue for prompt judicial review. 493 U.S. at 227–29, 110 S.Ct. 596. The Supreme Court concluded that the licensing scheme's failure to provide these two procedural safeguards created the risk of indefinitely suppressing permissible speech. *Id.* Recently, in *Baby Tam & Co.,* the Ninth Circuit held that a city licensing ordinance was unconstitutional because it lacked a provision for prompt judicial review. 154 F.3d at 1101–02. The court concluded that "'prompt judicial review' means the opportunity for a prompt hearing and a prompt decision by a judicial officer." *Id.* at 1101.

■■■ Under controlling precedent, this Court concludes that BP 5406 IV.J., IV.K., V.J. and V.K, the "approval and denial" provisions, are facially unconstitutional. They fail to provide for prompt judicial review, a necessary procedural safeguard. Section V.J is also invalid insofar as it fails to provide a time limit within which to deny or approve of postings or distributions of literature. *Compare* BP 5406 IV.B ("[r]equests to reserve a preferred area and/or use amplification equipment shall receive a response within two business days") *with* BP 5406 V.A–K (no similar time limit for denial/approval). Therefore, the Court finds Plaintiffs will likely succeed on the merits of their prior restraint claims.

## D. Severability

■■■ Severability of a state regulation is a matter of state law. *Leavitt v. Jane L.,* 518 U.S. 137, 138, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996). Under California law, three criteria exist for severability: "the invalid provision must be grammati-

cally, functionally, and volitionally separable." *Legislature of the State of Cal. v. Eu,* 54 Cal.3d 492, 535, 286 Cal.Rptr. 283, 816 P.2d 1309 (1991) ("Legislature of Cal.") (internal quotations omitted). "Severance of particular provisions is permissible despite the absence of a formal severance clause." *Id.* at 534–35, 286 Cal.Rptr. 283, 816 P.2d 1309.

 Here, to the extent that the provisions identified above are found to be invalid, the invalid provisions "can be grammatically severed without affecting the operation of the remaining" provisions. *Id.* at 535, 286 Cal.Rptr. 283, 816 P.2d 1309. Also, the invalid provisions are functionally severable in that their "removal would not affect the function or operation of the remaining provisions." *Id.* For example, sections III.D (declaring the District "remains neutral on religious and political matters"), III.G. (students or organizations responsible for event security for off-hours on-campus activities), IV.C (generally stating that use of district property must be scheduled through the President or designee on each campus), IV.I (no one is permitted to camp overnight on district property), and V.I (those who distribute materials are responsible for removing undistributed materials), among others, can operate independently. *See* BP 5406. Finally, the invalid provisions are volitionally severable in that the Court believes the drafters of BP 5406 "would have adopted the remaining provisions had they foreseen the success of [Plaintiffs'] challenge." *Legislature of Cal.,* 54 Cal.3d at 535, 286 Cal.Rptr. 283, 816 P.2d 1309. Therefore, the Court concludes that to the extent it finds sections III.C, IV.B.1, IV.F, IV.J, IV.K, V (opening paragraph), V.J. and V.K invalid, they

are severable from the Policy. The Court need not invalidate the entire Policy.[29]

### 1. Balance of Hardships

 Having already demonstrated the likelihood of success on the merits of the overbreadth, unreasonable time, place and manner, and prior restraint claims, a preliminary injunction with respect to those claims will be granted if Plaintiffs also show the possibly of irreparable injury if relief is not granted. Plaintiffs must also show that the balance of hardships at least tips in their favor. Here, it appears clear to the Court that the balance of hardships weighs strongly in Plaintiffs' favor. " 'The loss of First Amendment [and state constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' " *S.O.C.,* 152 F.3d at 1148.

### III. Conclusion

For all of the foregoing reasons, the Court will GRANT Plaintiffs' application for a preliminary injunction, to the extent the injunction enjoins the probably unconstitutional provisions discussed above. Plaintiffs are ORDERED to file and serve (personally or via facsimile) a Proposed Injunction, as well as Findings of Fact and Conclusions of Law consistent with this opinion by Monday, October 4, 1999.[30] Defendants should submit any objections as to form within five (5) court days after receipt of Plaintiffs' proposed papers. The Court will issue its preliminary injunction upon receipt and consideration of the parties' papers.

**SO ORDERED.**

---

29. Plaintiffs also challenge sections III.A. and III.E. on the ground that the phrases contained therein are vague. Motion at 15–16. The Court finds neither claim has merit. Plaintiffs' other constitutional challenges concern provisions that the Court has already addressed above. Because the Court has determined that those provisions are likely un-

constitutional on other grounds, the Court will not address the remainder of Plaintiffs' claims.

30. In addition to filing the documents referenced above, Plaintiffs are ORDERED to submit to the Court a copy of those documents on disk formatted for DOS Wordperfect 7.0.