**Pourya KHADEMI, et al., Plaintiffs,**

v.

**SOUTH ORANGE COUNTY COMMUNITY COLLEGE DISTRICT, Defendant.**

**No. CV01–1932ABC (MCX).**

United States District Court, C.D. California.

March 18, 2002.

Carol Sobel, Wendy Phillips, Santa Monica, CA, for Plaintiffs.

Allan Wilion, Wilion Kirkwood & Kessler, Los Angeles, CA, for Defendant.

## ORDER RE: PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION

COLLINS, District Judge.

In 1999, this Court enjoined the enforcement of certain sections *of a policy regulating the time, place, and manner of speech and* advocacy on campuses of Defendant South Orange County Community College District ("SOCCCD" or the "District"). Two and a half years later, the parties are again before the Court, in a challenge to the current speech and advocacy rules adopted by the *District,* Board Policy 8000 ("BP 8000"). Currently pending before the Court is Plaintiffs' Motion for Summary Adjudication. The Motion came on regularly for hearing on March 18, 2002. Upon consideration of the submissions of the parties, the case file, and the argument of counsel, the Motion is hereby GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the previous case, *Burbridge v. Sampson,* No. CV 99–9482 ABC (Mcx), plaintiffs Diep Burbridge, Scott Stephansky, and Dorothy Caruso brought a challenge to Defendant's Board Policy 5406. On September 29, 1999, the Court enjoined the enforcement of certain sections of that policy. *See Burbridge v. Sampson,* 74 F.Supp.2d 940 (C.D.Cal.1999).[1] In the summer of 2000, Defendant adopted a new time, place, and manner regulation, Board Policy 8000. Complaint ¶ 11, 11. 12–13; *see also* Motion Ex. 1 (BP 8000). On February 28, 2001, Plaintiffs brought the

current action to enjoin enforcement of BP 8000. Plaintiffs are Burbridge, a plaintiff in the earlier action, and James Irvine and Pourya Khademi. All three plaintiffs are students at one or both of the two campuses, Irvine Valley College and Saddleback College, that make up the SOCCCD. *See* Motion Decl. of Diep Burbridge ("Burbridge Decl."); Motion Decl. of James Irvine ("Irvine Decl."); Motion Decl. of Pourya Khademi ("Khademi Decl."). Plaintiffs allege that BP 8000 violates the First and Fourteenth Amendments of the United States Constitution; Article 1, sections 2 and 3 of the California Constitution; and California Education Code § 66301. Complaint ¶¶ 15–27. They seek declaratory and injunctive relief. Complaint Prayer for Relief ¶¶ 1–7.

On February 11, 2002, Plaintiffs filed a Motion for Summary Adjudication with regard to certain sections of BP 8000, noticed for hearing on March 11, 2002. Defendant filed an Opposition on February 26, 2002. Plaintiffs filed a Reply on March 4, 2002. On March 6, 2002, the Court continued the hearing to its present setting, March 18, 2002.

## II. LEGAL STANDARD

The party moving for summary judgment or summary adjudication has the initial burden of establishing that there is "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c); *see British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978); *Fremont Indemnity Co. v. California Nat'l Physician's Insurance Co.,* 954 F.Supp. 1399, 1402 (C.D.Cal.1997).

---

1. The parties appeared before the Court in two other lawsuits challenging BP 5406. The first, *Burbridge v. Mathur, CV 98–5274 ABC* (Mcx), was resolved when Defendant amended the policy. The third, *Stephansky v. Samp-*

*son,* CV 99–12815 ABC (Mcx), was brought after Defendant amended BP 5406 in response to this Court's injunction in *Burbridge v. Sampson. See* Complaint ¶¶ 11–12.

If the moving party has the burden of proof at trial (*e.g.,* a plaintiff on a claim for relief, or a defendant on an affirmative defense), the moving party must make a "showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting from Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). Thus, if the moving party has the burden of proof at trial, that party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see Calderone,* 799 F.2d at 259.

If the opponent has the burden of proof at trial, the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. 2548. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (citations omitted).

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... **must set forth specific facts** showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements to that party's case, and on which that party would bear the burden of proof at trial.

*Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 248, 106 S.Ct. 2505. However, the court must view the evidence presented "through the prism of the substantive evidentiary burden." *Id.* at 252, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Whether Plaintiffs Have Standing

As a threshold matter, the Court must examine whether Plaintiffs having standing to raise their challenges to BP 8000. Article III standing contains three elements: (1) "an injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) likelihood that the injury will be "'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The first element of the standing inquiry—the injury in fact—is "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) 'actual or imminent, not conjectural' or 'hypothetical.'" *Id.* at 560, 112 S.Ct. 2130 (citations omitted). A plaintiff must show that "'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *4805 Convoy, Inc. v. City of San Diego,* 183 F.3d 1108, 1111–12 (9th Cir.1999) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). "Thus, a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on

the legal rights or interests of third parties.'" *Id.* at 1112 (quoting *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) ("Munson")).

When a case concerns a challenge that a statute or ordinance is, on its face, unconstitutional, particularly in the First Amendment context, the type of facial challenge at issue affects the standing analysis. While the plaintiff must still demonstrate an injury in fact, plaintiff may assert not just his own constitutional rights, he may also assert the constitutional rights of others. *Id.*

■ A statute may be facially unconstitutional if (1) " 'it is unconstitutional in every conceivable application'" or (2) " 'it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad.'" *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir.1998) (quoting *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)).[2] The first type of facial challenge involves a plaintiff who argues that the statute "could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity." *Id.* In such a case, courts apply the general rule that a plaintiff has standing only to vindicate his own constitutional rights, rights that have been, or are in imminent danger of, being invaded by the government's implementation or enforcement of that statute. *See id.; cf. FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 220–21, 237, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ("There can be little question that the motel owners have 'a live controversy' against enforcement of [a] statute" that regulates adult motels and other "sexually oriented businesses").

■ However, an exception to the traditional standing rule applies in the First Amendment context when a plaintiff raises the second type of facial challenge. *Foti,* 146 F.3d at 635. In this type of challenge, "the plaintiff argues that the statute is written so broadly that it may inhibit the constitutionally protected speech of third parties." *Id.; accord Munson,* 467 U.S. at 956–57, 104 S.Ct. 2839. In such a case, the general limitation on standing is relaxed because there exists "a danger of chilling free speech" in society as a whole. *Munson,* 467 U.S. at 956–57, 104 S.Ct. 2839. Thus, so long as the plaintiff himself satisfies the injury in fact requirement, he has standing to argue that a law is facially overbroad as it relates to the expressive activities of others, whether or not he also challenges the law's overbreadth as it relates to his own expressive activities. *See id.* (a for-profit professional fundraiser who contracts with charitable organizations has standing to challenge a statute that prohibits charitable organizations from paying or agreeing to pay as expenses more than 25 percent of the amount raised in connection with any fundraising activity); *see also S.O.C., Inc. v. County of Clark,* 152 F.3d 1136, 1142–43 (plaintiff, whose First Amendment activities are directly impacted by the new ordinance, has standing to challenge the impact of the overbroad ordinance on behalf of itself and others not before the court), *amended on other grounds,* 160 F.3d 541 (9th Cir.1998). The "prior restraint" cases, where one who is subject to the law

---

**2.** "A successful challenge to the facial constitutionality of a law invalidates the law itself." *Foti,* 146 F.3d at 635; *accord Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("A 'facial' challenge ...

means a claim that the law is 'invalid in toto—and therefore incapable of any valid application' ") (quoting *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)).

alleges that a licensing statute vests unbridled discretion in the decision-maker over whether to permit or deny the expressive activity, fall into this category. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (discussing cases where a plaintiff has standing to bring facial overbreadth challenges, including prior restraint and unreasonable time, place and manner claims, "not because his own rights have been violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression"); *see also Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) ("In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license"); *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (same).

Here, both types of facial challenges are at issue. Plaintiffs first contend that BP 8000 is an impermissible time, place, and manner restriction that is "unconstitutional in every conceivable application." *Foti,* 146 F.3d at 635. *See* Motion at 4–14. With regard to this challenge, Plaintiffs may have standing only with regard to themselves. Plaintiffs also contend that, for six reasons discussed below, BP 8000 is unconstitutionally overbroad. *See* Motion at 14–20. With regard to this challenge, Plaintiffs may also have standing to assert the interests of third parties.

■ It is undisputed that BP 8000 regulates the on-campus and some off-campus speech and expressive activities of students of the two SOCCCD colleges. In order to post or distribute written materials, or engage in speech and advocacy on school grounds, Plaintiffs must comply with the requirements and restrictions of BP 8000. Plaintiffs allege that they have been engaged in numerous expressive activities on the SOCCCD campuses. *See* Burbridge Decl. ¶ 2; Khademi Decl. ¶ 3. They also allege that their various postings and banners have been removed and that they are subject to various restrictions and procedures under BP 8000 that limit and have chilled their expressive activities. *See* Burbridge Decl. ¶¶ 3, 6–8; Khademi Decl. ¶¶ 4–5; Irvine Decl. ¶¶ 3–4. BP 8000, as written, could possibly prevent Plaintiffs from engaging in certain constitutionally protected activities, restrict their manner of expression, and/or expose them to disciplinary action for engaging in certain protected activities. A favorable decision by this Court, enjoining the enforcement of part or all of BP 8000, will likely redress Plaintiffs' injuries. Under the facts as alleged, Plaintiffs have demonstrated that they are immediately in danger of sustaining some direct injury as a result of the implementation of the provisions of BP 8000 directed at student activity. Accordingly, the Court is satisfied that Plaintiffs have standing to challenge those provisions.

■ Plaintiffs also assert that they have standing to challenge the provisions of BP 8000 addressed to members of the public and those who seek to use SOCCCD facilities under the Civic Center Act, Cal.Educ. Code § 82537. Plaintiffs have not alleged that they personally have been or could be affected by these provisions of BP 8000. Accordingly, they do not have standing to bring a facial challenge to those sections as being impermissible time, place, or manner restrictions.

The question is whether the exception to the bar to third party standing in overbreadth cases should apply. "[S]ome nex-

us is ... required, even in first amendment cases, between the vice of the statute and the conduct of the litigant." Lawrence Tribe, *American Constitutional Law* § 12–32 at 1036 (2nd ed.1988). Here, there is no such nexus between the activities of these student Plaintiffs and the provisions applicable to members of the public and Civic Center Act users. In a proper overbreadth case, "the plaintiff argues that the statute is written so broadly that it may inhibit the constitutionally protected speech of third parties, even if his own speech may [constitutionally] be prohibited" by the ordinance. *Foti*, 146 F.3d at 635. In this case, in contrast, the general public and Civic Center Access Act provisions of BP 8000 will **never** prohibit or punish **any** expression by these Plaintiffs, regardless of whether or not that expression is constitutionally protected. Plaintiffs have not shown that they have sought or will seek to use the District's facilities as members of the public or under the Civic Center Access Act. "The overbreadth exception to the prudential limits on standing ... 'does not affect the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact....'" *Young v. City of Simi Valley*, 216 F.3d 807, 815 (9th Cir.2000) (quoting *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1112 (9th Cir.1999)). Plaintiffs have not met the injury in fact requirement with respect to the provisions of BP 8000 applicable to the general public and Civic Center Act users. Accordingly, the Court finds that Plaintiffs do not have standing to challenge these sections. *See Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1099 (9th Cir.2000) ("[A] litigant cannot sustain an overbreadth ... claim if he no longer has a personal interest in the outcome which itself satisfies the case or controversy requirement.").

### B. Whether the Motion is Properly Presented

Defendant contends that Plaintiffs' Motion is improperly presented because: (1) Plaintiffs' Separate Statement of Material Facts Not in Dispute ("Separate Statement") identifies no issues; (2) there is no number system in the Separate Statement; (3) Plaintiffs have violated Federal Rule of Civil Procedure 56(d); and (4) Plaintiffs have violated Local Rule 7.14. These arguments are all meritless.

Although Plaintiffs' Separate Statement should more properly have been captioned the "Statement of Uncontroverted Facts and Conclusions of Law," it complies with the requirements of Local Rule 56–1.[3] Because Plaintiffs have brought a **facial** challenge to BP 8000, there are inherently no factual issues to be identified. But if there were, Local Rule 56–2 puts the burden on Defendant, as the opposing party, to identify the issues in dispute. Plaintiffs have no such obligation. Additionally, there is no requirement that Plaintiffs number each paragraph in their Separate Statement.[4] *Compare* Local Rule 56–1 *with* Local Rule 52–3 (requiring that Proposed Findings of Fact and Conclusions of Law be in separately numbered paragraphs). Finally, it is not clear how Plaintiffs could have violated Rule 56(d), which sets forth the **Court's** duties in ruling on a motion for partial summary judgment.

### C. Whether Plaintiffs Have Challenged Section 76120

 BP 8000 is purportedly based on California Education Code § 76120 ("sec-

---

3. Local Rule 56–1 is the current version of Local Rule 7.14. Defendant is admonished to cite to the current Local Rules, which have been in effect for more than five months, since October 1, 2001.

4. The Court notes, however, that Plaintiffs have submitted a Corrected Separate Statement of Material Facts Not in Dispute with each paragraph numbered.

tion 76120"). *See* Motion Ex. 1 at § II.A. Section 76120 provides that entities such as Defendant shall adopt regulations protecting students' free speech rights on campus:

> The governing board of a community college district shall adopt rules and regulations relating to the exercise of free expression by students upon the premises of each community college maintained by the district, which shall include reasonable provisions for the time, place, and manner of conducting such activities.
>
> Such rules and regulations shall not prohibit the right of students to exercise free expression including, but not limited to, the use of bulletin boards, the distribution of printed materials or petitions, and the wearing of buttons, badges, or other insignia. . . .

However, section 76120 also provides an exception to its guarantee of freedom of expression on campuses:

> [T]hat expression which is obscene, libelous or slanderous according to current legal standards, or which so incites students as to create a clear and present danger of the commission of unlawful acts on community college premises, or the violation of lawful community college regulations, or the substantial disruption of the orderly operation of the community college, shall be prohibited.

Defendant contends that Plaintiffs are challenging the constitutionality of section 76120 and, therefore, that the California Attorney General must be named as a defendant in this action. The Court concludes that Plaintiffs are merely challenging Defendant's interpretation and application of section 76120, not the statute itself.

■ The Court acknowledges that the prohibitions on expression contained in section 76120, particularly the prohibition on expression that merely violates college regulations, are troublesome. However, "it is a cardinal principle" of statutory interpretation that when a statute raises "a serious doubt" as to its constitutionality, "this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932); *see also United States v. X–Citement Video, Inc.,* 513 U.S. 64, 78, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); *United States v. Jin Fuey Moy,* 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061 (1916). Accordingly, the Court will construe section 76120 as prohibiting only that expression which falls outside the bounds of protection of the First Amendment. *See, e.g., Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 513, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) ("[C]onduct by the student, in class or out of it, which for any reason . . . materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech."), *cited in Grayned v. Rockford,* 408 U.S. 104, 118, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Giebel v. Sylvester,* 244 F.3d 1182, 1187 (9th Cir.2001) ("narrow categories of speech, such as obscenity, are wholly outside the First Amendment").

### D. Whether BP 8000 Violates the Supremacy Clause

■ Plaintiffs first contend that the following provision of BP 8000 violates the Supremacy Clause[5] of the United States Constitution: "Expression by students

---

**5.** "This Constitution . . . shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the

Constitution or Laws of any State to the Con-

which may otherwise fall within the First Amendment IS NOT PROTECTED IF IT VIOLATES ... Section 76120." Motion Ex. 1 at § II.A.2 (emphasis in original). Clearly, this language suggests that the prohibitions contained in section 76120 will be elevated above the guarantees of the United States Constitution. But this Court is obligated, as noted above, to read section 76120 as consistent with the free speech guarantees of the First Amendment. Accordingly, in this facial challenge to BP 8000, the Court finds that there is no expression protected by the First Amendment that would violate section 76120. The Court does not rule out the possibility, however, that students could rely on the Supremacy Clause in a subsequent as-applied challenge to BP 8000 if Defendant were to punish or prohibit protected expression as violative of BP 8000 and section 76120.

### E. Whether State or Federal Constitutional Law Applies

Before reaching Plaintiff's challenges to BP 8000, the Court must address the role of state law in this case. Here, Plaintiffs challenge the validity of BP 8000 on the basis of both the United States Constitution and the California Constitution. The Ninth Circuit follows the doctrine that federal courts "should avoid adjudication of federal constitutional claims when alternative state grounds are available." *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1391–92 (9th Cir.1994). "Where the state constitutional provisions offer more expansive protection than the federal constitution, [the Court] must address the state constitutional claims in order to avoid unnecessary consideration of the federal constitutional claims." *Id.* at 1392. Thus, "[i]f the California Constitution provides 'independent support' for [Plaintiff's] claims, then 'there is no need for decision of the federal

[constitutional] issue.'" *Carreras v. City of Anaheim,* 768 F.2d 1039, 1042–43 (9th Cir. 1985) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 294–95, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)) (applying California law).

The California Constitution provides, in pertinent part: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. art. I, § 2; *compare* U.S. Const. amend. 1 ("Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."). "The California Constitution, and California cases construing it, accords greater protection to the expression of free speech than does the United States Constitution." *Gonzales v. Superior Court (City of Santa Paula),* 180 Cal.App.3d 1116, 1122, 226 Cal.Rptr. 164 (1986) (citing *Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 903, 907–10, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), among others). The state constitutional provisions are more protective and inclusive of the rights to free speech and press than the federal counterpart. *Id.* at 1123, 226 Cal.Rptr. 164.

While the free speech provisions differ, California courts draw upon both state and federal law for their state constitutional analyses. *See U.C. Nuclear Weapons Labs Conversion Project v. Lawrence Livermore Lab.,* 154 Cal.App.3d 1157, 1163, 201 Cal.Rptr. 837 (1984); *Gonzales,* 180 Cal.App.3d at 1123, 226 Cal.Rptr. 164 (federal law provides guidance). "Federal principles are relevant but not conclusive so long as federal rights are protected." *Robins,* 23 Cal.3d at 909, 153 Cal.Rptr. 854, 592 P.2d 341. "[W]here state law

trary notwithstanding." U.S. Const. art. VI, § 2.

affords greater protection to expression of free speech than federal law, state law prevails." *Gonzales*, 180 Cal.App.3d at 1122, 226 Cal.Rptr. 164. These principles will guide the Court in its analysis of Plaintiffs' constitutional challenges. Although Plaintiffs have, in their Motion, presented their state and federal constitutional challenges separately, the Court will, for the most part, treat them together.

### F. Whether BP 8000 is an Impermissible Prior Restraint

■ "A prior restraint exists when the enjoyment of protected expression is contingent upon the approval of government officials." *Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir. 1998) (citing *Near v. State of Minn. ex rel Olson*, 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)). "Although prior restraints are not unconstitutional per se, the Supreme Court has repeatedly stated that '[a]ny system of prior restraint' bears a 'heavy presumption against its constitutional validity.'" *Id.* (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)). To pass constitutional muster a prior restraint must, *inter alia*, require that a decision "'be made within a brief, specified and reasonably prompt period of time,'" *Burbridge*, 74 F.Supp.2d at 953 (quoting *Baby Tam*, 154 F.3d at 1100–01), and allow for prompt judicial review, *id.* (citing *Baby Tam*, 154 F.3d at 1101–02).

Plaintiffs contend generally that BP 8000 is an impermissible prior restraint. *See* Motion at 21–22. The Court disagrees, but finds that four individual provisions are unconstitutional. Section V.B.2 provides that "[u]se of any portion of the GROUNDS must be reserved. The decision whether to allow use of the GROUNDS lies solely within the discretion of the President." [6] Motion Ex. 1 at § V.B.2. Section V.B.4(a)(1) provides that on the campus of Irvine Valley College, "[n]o amplification of any type shall be permitted within Quad A or B or the Grounds without approval of the President." *Id.* at § V.B.4(a)(1). Section V.C provides that "[a]ny portion of interior SOCCCD property must be reserved. The decision to allow use of the interior of any SOCCCD property lies solely under the discretion of the President." *Id.* at § V.C.2. Lastly, interior amplification must be authorized by the President. *Id.* at § V.C.3.

■ These sections are prior restraints because they condition expression in certain areas of the District's campuses upon approval of the administration. Accordingly, they are subject to strict scrutiny. In particular, they "may not delegate overly broad licensing discretion to a government official." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). The four sections identified here delegate completely unfettered discretion to the campus presidents to permit or prohibit expression. When a permit scheme is "completely discretionary, there is a danger that protected speech will be suppressed impermissibly because of the government official's ... distaste for the content of the speech." *Young v. City of Simi Valley*, 216 F.3d 807, 819 (9th Cir.2000) (citing *FW/PBS*, 493 U.S. at 226, 110 S.Ct. 596). Because these provisions provide the presidents with absolutely no standards to guide their decisions, they are unconstitutional and must be stricken.[7]

---

6. The grounds are defined as outdoor areas on the campuses not covered by section V.A of BP 8000. *See* Motion Ex. 1 at V.B.1.

7. The Court briefly explains why three other provisions are not prior restraints. None of them give "'public officials the power to deny use of a forum in advance of actual expres-

### G. Whether BP 8000 is a Permissible Time, Place, and Manner Restriction

There is no doubt that the fora at issue—the facilities and areas which the college has made generally available for use by students and the community at large—have been opened to the public. *See* Motion Ex. 1 at § I.A.3 ("The SOCCCD is committed to assuring that all persons may exercise their respective constitutional rights protected under the First Amendment of the Federal Constitution[ ], and similar provisions within the California Constitution throughout the facilities under its jurisdiction. . . ."); *see also Widmar v. Vincent,* 454 U.S. 263, 267–69, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (treating university facilities as designated public fora where the university had opened its facilities for use by student groups); *Burbridge,* 74 F.Supp.2d at 947–48. Once the state elects to open a forum to the public for expressive activities, the state may establish and enforce " 'reasonable, time, place and manner regulations' " as long as they (1) are content-neutral, (2) are narrowly tailored to serve a significant governmental interest, and (3) leave open ample alternative channels of communication. *Gonzales,* 180 Cal.App.3d at 1125, 226 Cal. Rptr. 164 (concerning both state and federal constitutions but quoting *United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983)); *accord Robins,* 23 Cal.3d at 909, 153 Cal.Rptr. 854, 592 P.2d 341 ("property owners as well as government may regulate speech as to time, place and manner").

### 1. Content–Based Provisions

■■■ Any policy regulating protected speech and advocacy activities in a public (or designated public) forum, "which is 'based upon the content of speech[,]' requires strict scrutiny." *U.C. Nuclear Weapons Labs,* 154 Cal.App.3d at 1170, 201 Cal.Rptr. 837 (concerning both state and federal constitutions but quoting *Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 535–36, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980)). " 'For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.' " *Foti,* 146 F.3d at 635 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (citation omitted)). Content-based provisions must also use the least restrictive means to further the articulated interest. *See id.* at 636 (citing *Sable Communications of Cal. v. FCC,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989)).

" 'As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based.' " *See Foti,* 146 F.3d at 636 (quoting *Turner Broad. Sys. v. FCC,* 512 U.S. 622, 643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)); *see*

sion.' " *Ward v. Rock Against Racism,* 491 U.S. 781, 795 n. 5, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (quoting *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975)). First, BP 8000 provides for optional reservation systems for the prime areas on each campus. *See* Motion Ex. 1 at § V.A.7. Because students are not required to reserve, their expression is not conditioned upon approval by the District administration. Similarly, BP 8000 requires a reservation for the use of its amplification system in these prime areas. *See id.* at § V.A.9. But students may bring their own amplifications systems. *See id.* at § V.A.10(f). Accordingly, amplified speech is not conditioned upon the approval of the District's administrators. Finally, all postings by students must contain certain required information and may contain certain other information. *See id.* at § VIII.B.4. Students need not, however, seek approval before posting their written material. *See id.* at § VIII.A.

*also S.O.C.*, 152 F.3d at 1145 ("A speech restriction is content-neutral if it is 'justified without reference to the content of the regulated speech.'") (quoting *Clark v. Comm'y for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)). BP 8000 purports to be content-neutral, but, in the same sentence, acknowledges that it is not. *See* Motion Ex. 1 at § IV.C ("The policy is content-neutral **with the exception of ED 76120, and to the extent that it seeks to preclude certain types of speech designated herein below.**") (emphasis added). BP 8000 is content-based in any section wherein it distinguishes between protected and unprotected (or violative of Section 76120) expression. Plaintiffs identify fourteen sections and subsections as being content-based: Sections II.A.3, II.A.4, II.B, III, VII, VIII.B.7, VIII.B.8, IX.E, XII, XIII.G.2, XIII.I.2, XIII.L.1(h), XIII.M, and XV.F.[8] For the reasons noted above, Plaintiffs do not have standing to challenge any provisions in §§ XIII and XV. With regard to the remaining nine sections, the Court agrees that all but one are content-based.[9]

### a. *Provisions Based on Section 76120*

▮▮ Section III provides for administrative review of complaints that student speech has violated section 76120. In particular, section III.E requires the President of each campus to initially respond to complaints that student expression has violated section 76120, while sections III.H and III.I establish the procedures for the institution of administrative proceedings in response to such a complaint:

H. *Administrative Proceedings*

The President may institute administrative proceedings against the student if the President determines that the provisions of Section 76120 are violated. The President and/or Chancellor each have sole discretion to institute administrative proceedings.

I. The President and/or Chancellor shall consult with legal counsel and receive a written legal opinion that there is a reasonable basis that Section 76120 has been violated ... before the President may institute administrative proceedings.

Motion Ex. 1 at §§ III.H–I. Similarly, section VII establishes the procedures by which the administration may independently institute administrative proceedings:

A. The President of each campus reserves the right to institute administrative proceedings against each student who violates the provisions of this policy including the provisions of Section 76120.

B. Disciplinary proceedings shall **not** be based on content of any statement with the following exceptions [sic]:

1. Violation of Education Code 76120

C. All rights and remedies with regard to administrative review set forth in other Policies which govern student

---

**8.** The Court notes that several other provisions of BP 8000 not identified by Plaintiffs also distinguish between protected and unprotected expression. Because they are not explicitly challenged, the Court does not determine, at this time, if they are permissible. Defendant should not construe the Court's nonaction in this regard as a judgment that those provisions are constitutional.

**9.** Section II merely describes section 76120 and California defamation law. With the exception of section II.A.3, which the Court addresses with regard to Plaintiffs' overbreadth claim, below, section II does not independently call for any content-based determination to be made by District administrators.

actions are incorporated herein by reference.

Motion Ex. 1 at § VII (emphasis in original).

Sections VIII and IX apply to postings and distribution of writings on the District's campuses. Section VIII.B.7 gives the District "the absolute right to review writings [sic] after it is posted to determine if it complies with Education Code Section 76120." Motion Ex. 1 at § VIII.B.7. Section VIII.B.8 allows the District to order the removal of any writing that violates section 76120, Motion Ex. 1 at § VIII.B.8(a)(2), and gives the President the discretion, after consulting with legal counsel, to institute disciplinary proceedings based on a single violation of section 76120, *id.* at § VIII.B.8(c). Section IX.E.1 allows the President to order any person distributing material violative of section 76120 to stop distributing the writing. Motion Ex. 1 at § IX.E.1.

All these sections require District administrators to examine the content of expression to determine if it violates section 76120 and then allow or require administrators to take punitive, disciplinary action based on that content. Accordingly, the Court determines that the sections are content-based. *Cf. Mardi Gras of San Luis Obispo v. City of San Luis Obispo,* No. CV 02–323, 189 F.Supp.2d 1018, 1029 (C.D.Cal.2002) (finding that a city ordinance was content-based because it required "a City official [to] make a determination whether an activity proposed by an applicant is protected by the First Amendment"). Because the regulations are content-based, "Defendant[ ] must demonstrate that [the provisions] are necessary to further a compelling interest and that they are narrowly drawn to achieve that end." *Burbridge,* 74 F.Supp.2d at 950 (citing *Foti,* 146 F.3d at 635). Defendant contends that BP 8000 "strikes a very reasonable balance between its rights and duties imposed by Section 76120 ... and the First Amendment." Opp'n at 10:9–10 (emphasis in original). The Court interprets this statement to mean that Defendant is asserting a compelling state interest in complying with section 76120.

█ The state has a compelling interest in the enforcement of its **criminal** laws. *See, e.q., Branzburg v. Hayes,* 408 U.S. 665, 700–01, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). But the District has no compelling interest in enforcing state **civil** law if doing so impinges on First Amendment rights. *See Bessard v. Cal. Comm'y Colleges,* 867 F.Supp. 1454, 1464 (E.D.Cal. 1994). Although the Court has not construed section 76120 as prohibiting any protected expression, the District's enforcement of that code section infringes on students' First Amendment rights in that it requires District administrators to examine the content of the students' expression.

█ Defendant must proffer compelling reasons to justify each prohibition in section 76120 and adopted by BP 8000. The Court can conceive of a number of legitimate state interests, such as protecting student health and safety and preventing disruption of the learning environment, that might be served by prohibiting the kinds of speech proscribed by section 76120. *Cf. Orin v. Barclay,* 272 F.3d 1207, 1214–15 (9th Cir.2001) (upholding content-neutral restrictions as narrowly tailored to a community college's pedagogical purpose). But Defendant has not identified any such interests beyond those identified in the policy itself. *See* Motion Ex. 1 at § I.A.4 ("This policy is designed to encourage ... students who want to attend class, and need to study in a peaceful and quiet setting, to do so without interference or disruption."). More importantly, Defendant has not demonstrated that these interests are compelling (as opposed to

merely significant) and has not demonstrated that the content-based restrictions are narrowly tailored to these ends. *Cf. S.O.C.*, 152 F.3d at 1146 ("These substantial interests, however, may not be compelling.... Because Clark County assumed throughout these proceedings that Ordinance Section 16.12 is content-neutral, it has not offered any reason why its interests in aesthetics and traffic safety are compelling."); *see also Healy v. James,* 408 U.S. 169, 184, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972) ("While a college has a legitimate interest in preventing disruption on campus ..., a 'heavy burden' rests on the college to demonstrate the appropriateness of that action."), *quoted in Widmar v. Vincent,* 454 U.S. 263, 270 n. 7, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981).

The burden is on Defendant, not the Court, to justify the content-based sections of BP 8000. *See Williams v. Eastside Lumberyard & Supply Co.,* 190 F.Supp.2d 1104, 1114 (S.D.Ill.2001) ("A judge is the impartial umpire of legal battles, not a [party's] attorney. He is neither required to hunt down arguments [the parties] keep camouflaged, nor required to address perfunctory and undeveloped arguments.... [T]o the extent that [Defendant] failed to develop any additional argument[s] or provide any legal support for them, [it] has waived them.") (citing cases including *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")).

Nevertheless, the Court finds that the District has a compelling state interest in preventing "the commission of unlawful acts on community college premises" and "the substantial disruption of the orderly operation of the community college." Cal. Educ.Code § 76120. *See, e.g., Tinker,* 393 U.S. at 513, 89 S.Ct. 733; *Stockton v. City of Freeport,* 147 F.Supp.2d 642, 647 (S.D.Tex.2001) (school has "dramatically

compelling interests in maintaining a safe place of learning"); *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh,* 58 F.Supp.2d 619, 625 (W.D.Pa.1999) (university has "a compelling interest in maintaining a safe educational environment"). But the Court cannot find that the District has a compelling interest in preventing the other types of expression that are prohibited by section 76120. Even if section 76120 prohibits only expression outside the protection of the First Amendment, Defendant must proffer a compelling state interest that justifies the examination of the content of expression to root out that prohibited expression. Given the interest of the faculty and student body in intellectual freedom, the Court cannot find that the District has a compelling interest in, for example, prohibiting obscenity that justifies these content-based provisions. *See, e.g., Keyishian v. Bd. of Regents of the Univ. of the State of New York,* 385 U.S. 589, 603, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) ("Our Nation is deeply committed to safeguarding academic freedom.... [T]he First Amendment ... does not tolerate laws that cast a pall of orthodoxy over the classroom.").

Because the Court does not find a compelling interest justifying the examination of the content of student expression to root out all speech prohibited by section 76120, the blanket enforcement of section 76120 is not narrowly tailored to those interests that the Court finds are compelling. *Cf. Tinker,* 393 U.S. at 508, 89 S.Ct. 733 ("undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression"). Accordingly, the blanket imposition of the terms of section 76120 must be stricken.

*b. Ban on Certain Advertising Materials*

 Additionally, Plaintiffs contest BP 8000 § XII, which bans certain types

of materials from the District's campuses:[10]

A. All commercial material which advertises the following items are [sic] banned from any SOCCCD property:

1. Alcoholic beverages, including wine, liquor, and beer of any type (exception non-alcoholic beer);

2. Tobacco products of any kind, including cigarettes, cigars, and chewing tobacco;

3. Guns or firearms of any kind;

4. Illegal substances as identified by the Federal Government, and/or by the State of California;

5. Explosive materials of any kind.

B. All material which is defamatory and/or which contains obscene language as defined by Education Code Section 76120 is prohibited.

Motion Ex. 1 at § XII.A, B. Section XII.B is unconstitutionally content-based for the same reasons as the other provisions regarding section 76120 discussed above. This provision, too, must be stricken from the policy. Section XII.A is also content-based, as it singles out certain kinds of commercial advertising based on its content.[11] Defendant has offered no state interest in defense of the advertising ban. *See* Opp'n at 11 n. 7 ("It is submitted that an educational facility can ban tobacco and alcohol ads.").[12]

Commercial speech does not fall outside the purview of the First Amendment. *See*

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 121 S.Ct. 2404, 2421, 150 L.Ed.2d 532 (2001) (citing *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 762, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)). The Court is to apply "a framework for analyzing regulations of commercial speech that is 'substantially' similar to the test for time, place, and manner restrictions." *Id.* (quoting *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989)). The test, established in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), contains four elements:

> "At the outset, [the Court] must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."

*Lorillard*, 121 S.Ct. at 2421 (quoting *Central Hudson*, 447 U.S. at 566, 100 S.Ct. 2343). In *Burbridge*, the Court found that a ban on commercial advertising was not narrowly tailored to either of Defendant's two proffered interests. *See* 74 F.Supp.2d at 949–50. Given the state's interest in

---

**10.** Plaintiffs do not have standing to contest section XII.C.

**11.** The Court can only assume that section XII.A is an attempt to avoid the problems the District faced with its prior policy, which prohibited *all* commercial advertising. *See Burbridge*, 74 F.Supp.2d at 949–50. But the current policy is no less content-based. *See id.* at 950 (finding content-based provisions of the former policy that distinguished between

advertising for "the occasional/incidental sale of personal property" and other commercial advertising).

**12.** Because Plaintiffs have brought a time, place, and manner challenge to these provisions, not an overbreadth challenge, the discussion of ripeness in *Board of Trustees of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481–86, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), is not relevant.

enforcing its **criminal** laws, discussed *supra*, and the theory that "product advertising stimulates demand for products," *Lorillard*, 121 S.Ct. at 2423, the Court finds that the ban on advertising of "[i]llegal substances as identified by the Federal Government, and/or by the State of California," Motion Ex. 1 at § XII.A.4, is permissible. The other provisions, however, are not supported by any state interest, are unconstitutionally content-based, and must be stricken.[13]

### c. Denial of Reservations

Section V.A.7[ (d) ][14] provides that an application to reserve a prime area on campus may only be denied:

(i) if there is a preexisting reservation, (ii) such conditions as may be applicable to the lawn areas, (iii) and/or there is an unreasonable risk of harm or an activity that will create an unreasonable risk of harm (set forth in Section XIII), or [ (iv) ] there is a clear violation of ED 76120.

Motion Ex. 1 at § V.A.7[ (d) ]. The first two bases for denial (preexisting reservations and lawn maintenance) are content-neutral and will be discussed below. The third and fourth bases are content-based, as they require the administrator to examine the content of the proposed expression to determine if it will create an unreasonable risk of harm or violates section 76120.

An unreasonable risk of harm is defined as including "[c]ertain types of music concerts where in the discretion of the President an unreasonable risk of harm is foreseeable." Motion Ex. 1 at § XIII.L.1(h).

 The provision that allows administrators to rely on section 76120 to deny a reservation must be stricken for the same reasons that the other section 76120 provisions in BP 8000 are impermissible. As a general matter, also for reasons discussed above, the District has a compelling state interest in prohibiting expression that will create an unreasonable risk of harm. However, the Court agrees that the prohibition on "[c]ertain types of music concerts" is unconstitutional. As the Court has held, this optional reservation system is not a true prior restraint. Nevertheless, the Court concludes that, having chosen to give students the option of reserving space, the District, in establishing a system for denying those reservations, must adopt the same types of procedural protections and guidance that characterize valid prior restraints. The provision as written gives the campus presidents unbridled discretion in choosing which music concerts to prohibit. Accordingly, this basis for denying a reservation must be stricken.

The other activities barred by section XIII.L.1 are not expressive. The Court

**13.** Even if Defendant had identified a relevant state interest, "a complete ban on the communication of truthful information ... to adult customers," *Lorillard*, 121 S.Ct. at 2425, would not be the least restrictive means necessary to advance that interest. In the Fall 2001 semester, 1,083 of the District's 33,706 students (3 percent) were under 18 years of age, while an additional 9,685 students (29 percent) were between 18 and 21 years of age. South Orange County Community College District, *The Almanac*, http://www.socccd.cc.ca.us/ ref/almanac/demographics /diststudcharf.htm (last updated 9/24/01). Sixty-eight percent of the District's students are legally of age to buy alcohol, tobacco, and

firearm products. Therefore, section XII completely bans advertising of lawful production information to an adult population.

Both because section XII bans advertising directed at an adult population and because the reasoning of the decision has been called into question by *Lorillard*, Defendant's reliance on *Eller Media Co. v. City of Oakland*, No. C 98–02237 WHA, 2000 WL 33376585 (N.D.Cal. Dec.7, 2000), is misplaced.

**14.** Section V.A.7 actually contains two subsections labeled "c." For ease of reference, the Court refers to the second subsection as "(d)."

assumes they are permissible grounds for prohibiting student activity. But section XIII.L.1 also gives the campus presidents unlimited discretion to identify other types of expressive activities that create an unreasonable risk of harm. This unbridled discretion is impermissible and must be stricken.

### 2. Content–Neutral Provisions[15]

Plaintiffs also identify a number of content-neutral provisions that, they contend, are not narrowly tailored to significant state interests and do not leave open adequate alternative avenues for communication. The failure to satisfy any one of the three prongs of a time, place, and manner regulation is constitutionally fatal. *Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). The Court addresses only those content-neutral provisions identified by Plaintiffs that do not suffer from constitutional flaws discussed elsewhere in this Order.[16]

#### a. Exception for the SOCCCD and its Contractors

 BP 8000 excepts the District and "all persons or groups who enter into contracts with SOCCCD" from "the provisions pertaining to banners, posters, and/or distribution of material. . . ." Motion Ex. 1 at § I.B.1, 2; *see also id.* at § X.D (excepting contractors from the restrictions on banners). The Court agrees with Plaintiffs that these two provisions are unconstitutional to the extent that they exempt contractors from the requirements of BP 8000. "Granting waivers to favored speakers . . . would of course be unconstitutional. . . ." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, ——, 122 S.Ct. 775, 781, 151 L.Ed.2d 783 (2002).[17] Accordingly, sections I.B.2 and X.D must be stricken from BP 8000.

Defendant asserts that it "has the right to exempt itself from the scope of the Policy since it is the enforcing entity." Opp'n at 19:22–23. *See* Motion Ex. 1 at § I.B.1 ("The restrictions set forth in this policy including those with regard to amplification, posting, and/or distribution of material, including banners, are **NOT** applicable to SOCCCD.") (emphasis in original). Defendant cites no legal authority in support of this proposition. On the other hand, Plaintiffs have provided no contrary authority. The Court will reserve ruling on this provision at this time.[18]

#### b. Lawn Maintenance

 Section V.A.6 excludes use of the lawn areas on the campuses in the following cases:

---

**15.** The provisions discussed in this section of the Court's Order are the only ones to which the Supreme Court's recent decision in *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002), are relevant.

**16.** Plaintiffs do not appear to challenge the limits on the hours that amplification may be used on campus. *See* Motion Ex. 1 at § V.A.10(a)–(b). Accordingly, the Court does not rule on the constitutionality of these provisions. However, the Court notes its concern that these provisions do not meet the requirement of leaving open adequate alternative avenues for communication.

**17.** The *Thomas* Court rejected a facial challenge on this ground because "a pattern of unlawful favoritism" had not been shown. 534 U.S. at ——, 122 S.Ct. at 781. In this case however, the blanket waiver for favored groups is explicit and a facial challenge is appropriate.

**18.** The Ninth Circuit has not ruled on this question but has stated that it is "troubled by [a] wholesale exemption for government speech." *Foti*, 146 F.3d at 637. Defendant should not, therefore, construe the lack of ruling on this question as a judgment that this provision is constitutional.

1) In the event of substantial rainfall, the President may limit or restrict access on the lawn until such time as it is relatively safe to utilize the lawn area;

2) During watering periods;

3) During maintenance by the gardeners;

4) During times when the area may contain pesticides, and/or fertilizer;

5) A reasonable period as may be determined by the President related to the care, feeding, and/or maintenance of the grass area.

Motion Ex. 1 at § V.A.6. Plaintiffs contend that this section is not narrowly tailored to any significant interest because the last section gives the campus presidents discretion to prohibit speech with which they disagree. *See* Motion at 7:24–8:5.

Defendant asserts that "care and maintenance of the lawn area is essential." Opp'n at 14:8. Although Defendant has not presented a terribly helpful formulation, the Court agrees that the District has a substantial interest in the upkeep of its property. *Cf. Community for Creative Non–Violence*, 468 U.S. at 296, 104 S.Ct. 3065 (recognizing the government's "substantial interest in maintaining the parks . . . in an attractive and intact condition"). The Court also finds that the provision is narrowly tailored in that it " 'promotes a substantial government interest that would be achieved less effectively absent the regulation.' " *Rock Against Racism*, 491 U.S. at 799, 109 S.Ct. 2746 (quoting *United States v. Albertini*, 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). Obviously, Defendant would be less able to maintain its lawns if it were not permitted to bar people from trampling on it during sensitive periods.

The discretion delegated to the campus presidents to set aside time for lawn maintenance does not defeat this provision. Initially, because this is not a prior restraint, it is not even clear to the Court that Plaintiffs' discretion argument applies. *Cf. Rock Against Racism*, 491 U.S. at 793–95, 109 S.Ct. 2746. Additionally, the discretion is not unfettered. The presidents may only set aside reasonable times for lawn maintenance. If the campus presidents were setting aside more time than was reasonable or prohibiting student expression during times not required for lawn maintenance, Defendant would almost certainly be subject to an as-applied challenge. *See id.* at 794–95, 109 S.Ct. 2746 ("While these standards are undoubtedly flexible, and the officials implementing them will exercise considerable discretion, perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity. . . . The guideline is not vulnerable to respondent's facial challenge.").

Lastly, the Court finds that the prohibitions on lawn use leave ample alternative avenues for communication. Plaintiffs never argue that these restrictions on lawn use do not leave open adequate other areas for communication. Rather, they contend that under BP 8000 in its entirety, there are not indoor venues available during evening hours and inclement weather and there is no way to reach visitors to campus during contractor events in the parking lots. *See* Motion at 13–14. The Court finds that during the limited periods when the lawn areas are not available, many other areas on campus are available for expression; and most of the time, the lawns themselves are available. For these reasons, the Court finds that the prohibitions on lawn use are reasonable time, place, and manner restrictions.

### c. Denial of Reservations

The campus presidents may deny reservations for the prime areas on campus when there is a preexisting reservation or

because of maintenance of the lawn areas. *See* Motion Ex. 1 at § V.A.7[ (d) ](i)–(ii). For the reasons discussed above, the provision allowing denial based on lawn maintenance is permissible. The Court also finds that the provision allowing denial because there is a preexisting reservation is a reasonable time, place, and manner restriction. *See Thomas,* 534 U.S. at —— n. 1, 122 S.Ct. at 777 n. 1 (approving ordinance that allowed a permit application to be denied because another permit application for the same time and place had been approved or because it conflicted with a previously planned program for the same time and place); *Grayned v. City of Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ("[T]wo parades cannot march on the same street simultaneously, and government may allow only one.") (citing *Cox v. New Hampshire,* 312 U.S. 569, 576, 61 S.Ct. 762, 85 L.Ed. 1049 (1941)).

### d. Charging for Costs of Litter Clean-up

Lastly, Plaintiffs challenge the provision that allows the District to charge the distributor of a writing for costs incurred in cleaning up resulting litter. *See* Motion Ex. 1 at § IX.D. Plaintiffs contend that this provision "vest[s] unbridled discretion to charge costs of 'clean-up' for 'litter' by recipients based on content." Motion at 9:22–23.

As observed above, it is not even clear whether Plaintiffs' unbridled discretion argument applies to this provision. *See Rock Against Racism,* 491 U.S. at 793–95, 109 S.Ct. 2746. The Court will uphold this provision for the same reasons that the restrictions on lawn maintenance are permissible.

### H. Whether BP 8000 is Unconstitutionally Overbroad

■ Plaintiffs contend that BP 8000 is overbroad on a number of grounds. Be-

cause Plaintiffs do not have standing to bring the following challenges, the Court does not address the arguments that BP 8000 is overbroad because it extends section 76120 to non-student speech both on- and off-campus, Motion at 16:18–20, 17:2–4; because it imposes the restrictions of Section 76120 to Civic Center Act users, Motion at 17:7–13; because it restricts access under the Civic Center Act to non-profit organizations and groups, Motion at 17:16–18:6; because it prohibits the public from distributing leaflets in certain areas, Motion at 18:10–12; and because it limits anonymous speech by non-students, Motion at 19:24–20:21. The Court now turns to Plaintiffs' remaining arguments.

■ A regulation is unconstitutionally overbroad if it " 'does not aim specifically at evils within the allowable area of [government] control, but ... sweeps within its ambit other activities that constitute an exercise' of protected expressive or associational rights." Tribe, *supra,* § 12–27 at 1022 (quoting *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940)) (alteration in original). "A plausible challenge to a law as void for overbreadth can be made only when (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory way of severing the law's constitutional from its unconstitutional applications so as to excise the latter clearly in a single step from the law's reach." *Id.* (emphasis omitted).

### 1. Definitions of Defamation

■ Plaintiffs first contend that BP 8000 defines defamation too broadly, *see* Motion Ex. 1 at § II.B, "and implies to someone reading the policy ... that speech outside these limits is not protected and would, in fact, be barred by Education Code § 76120." Motion at 15:11–13. Plaintiffs argue that the defamation defini-

tion is overbroad because "a potential speaker ... might refrain from speaking from fear his or her speech would not be protected." *Id.* at 16:5–7.

BP 8000 advises that it is providing information about California defamation law "as a public service" and that "California defamation law exists separate and apart from this policy...." Motion Ex. 1 at § II.B.1. BP 8000 does not explicitly state whether the definitions provided in the section on California defamation law are intended to be exhaustive. The Court agrees with Plaintiffs that the definitions provided are incomplete (*e.g.,* the section does not discuss the category of "limited public figures"). Nevertheless, the Court finds that the provision is not unconstitutionally overbroad. Given the Court's obligation to construe the statute to avoid unconstitutionality, the Court finds that the provision simply provides information by way of example and does not suggest that it is a complete treatise on defamation law.

"Application of the overbreadth doctrine ... has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908. In this case, the Court does not interpret BP 8000's descriptions of California defamation law as actually prohibiting any protected expression. "Although such laws, if too broadly worded may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face...." *Id.*

at 615, 93 S.Ct. 2908. In this case, the Court cannot say with confidence that BP 8000 would, for example, deter a student from criticizing a limited public figure. The Court finds that Plaintiffs' attack on the definitions of defamation is better suited to an as-applied challenge should a student actually be punished for protected speech. *Cf. id.* at 615–16, 93 S.Ct. 2908 ("[W]hatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.").[19]

### 2. Prohibition on Protected First Amendment Speech

Next, Plaintiffs contend that BP 8000 is overbroad in that it prohibits otherwise protected speech that violates section 76120. The Court rejects this argument for the same reasons it rejected Plaintiffs' Supremacy Clause challenge, *supra.*

### 3. Extension of Section 76120 to Off-Campus Speech

■ Thirdly, Plaintiffs argue that BP 8000 is overbroad in that it extends the prohibitions of section 76120 to students' off-campus speech. *See* Motion at 16:18–20; 17:5–6. However, Plaintiffs have pointed to no authority that would prohibit the District from applying otherwise permissible time, place, and manner restrictions on its own students' speech to off-campus facilities **used by the District.**[20] The District's interest in, for example, preventing conduct that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others," *Tinker,* 393 U.S. at 513, 89 S.Ct. 733, would apply

**19.** Despite the Court's holding in this regard, Defendant is urged to clarify or delete these provisions.

**20.** BP 8000 only covers off-campus facilities "used for SOCCCD programs." Motion Ex. 1 at § II.A.3. The Court notes that a different

result would likely be reached if BP 8000 purported to regulate off-campus student speech in venues unconnected to the District at all (or, in an as-applied challenge, if the District were punishing expression by students in their non-academic lives).

to off-campus facilities as well as on-campus. Therefore, to the extent that the District can, consistent with this Order, enforce section 76120, it may be applied to off-campus facilities used for SOCCCD programs.

### 4. Ban on Leaflets on Windshields, in Parking Lots, and Inside Buildings

■ Lastly, Plaintiffs object to the sections of BP 8000 that prohibit students from distributing writings "inside all buildings including classrooms" and in "parking lots" as overbroad.[21] Motion Ex. 1 at §§ IX.C.1, 2; *see also id.* at § VIII.B.3(a)(3) (no posting on windshields). The Court agrees. These sections ban **all** writings, whether or not they violate section 76120 (and thus fall outside the scope of protection of the First Amendment) and whether or not the school has any legitimate interest in banning their distribution. Like Plaintiffs, the Court conceives of a broad array of protected expression barred by these provisions, ranging from class notes to the campus newspaper to campaign materials. These sections are patently overbroad. *Cf. Krantz v. City of Fort Smith,* 160 F.3d 1214 (8th Cir.1998) (striking down as overbroad a city ordinance that prohibited the placement of **all** leaflets on parked cars).[22] The language is clear and precise—all dis-

tribution of writings is barred; the Court cannot narrow the provisions in a way to avoid the constitutional problem.

The Court must apply the time, place, and manner test discussed above to these provisions. *See id.* at 1219. It is clear, because they are not limited to those writings violative of section 76120, that the provisions are content-neutral. However, the Court finds as a matter of law that the provisions are not narrowly tailored to a significant governmental interest. In fact, because the provisions are so sweeping, Defendant will be unable to show that they are narrowly tailored to anything. In particular, Defendant has not shown that the provisions are narrowly tailored to the District's interest in protecting students from being "cornered and deluged by persons who seek to advertise or convert followers for any cause or seek contributions...." Opp'n at 22:23–24. Even if that were a significant government interest, the provisions encompass writings that go far beyond advertising and soliciting.[23] Nor do the provisions go very far in preventing advertising and soliciting, which can happen in the absence of the distribution of written material. Likewise, the provisions are not narrowly tailored to the prevention of litter. First, these sections bar the distribution of a wide range of writings,

**21.** Defendant contends, without much analysis, that the building interiors and parking lots are not public fora. Opp'n at 24:16–17. The Court disagrees and finds that they are, at least, designated public fora. The District has opened them to the public to some extent. *See* Motion Ex. 1 at § V.B (describing requirements for student use of the grounds, including the parking lots); *id.* at § V.C (describing requirements for student use of building interiors). Even if the terms of BP 8000 did not open these areas to the public, the fact that outside contractors are allowed to use them would lead the Court to the same conclusion.

**22.** Defendant's effort to distinguish *Krantz* is unavailing. Because the SOCCCD building

interiors and parking lots are public fora, it is irrelevant that *Krantz* involved public parking lots. It is also irrelevant that the plaintiffs in *Krantz* were distributing religious material. Like the sections of BP 8000 at issue here, the ordinance in *Krantz* barred distribution of all leaflets. *See Krantz,* 160 F.3d at 1216 (" 'any commercial or non-commercial handbill' ").

**23.** These provisions are thus distinguishable from *Los Angeles Alliance for Survival v. City of Los Angeles,* 22 Cal.4th 352, 93 Cal.Rptr.2d 1, 993 P.2d 334 (2000), upon which Defendant relies. The ordinance at issue in *Los Angeles Alliance for Survival* specifically prohibited solicitation.

such as class notes, unlikely to result in litter. Additionally, the District could punish those who create litter, rather than barring the distribution of all writings. *Cf. Krantz,* 160 F.3d at 1219 (citing *Schneider v. New Jersey,* 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 (1939)). Because BP 8000 §§ IX.C.1 and IX.C.2 are not narrowly tailored to a significant government interest, they are unconstitutionally overbroad. The Court need not reach the question of whether the District has left open ample areas for distribution of writings.

### I. Whether BP 8000 Violates California Education Code § 66301

Lastly, Plaintiffs contend that BP 8000 violates California Education Code § 66301 ("section 66301"), which prohibits:

mak[ing] or enforc[ing] any rule subjecting any student to disciplinary sanctions solely on the basis of conduct that is speech or other communication that when engaged in outside a campus of those institutions, is protected from governmental restriction by the First Amendment to the United States Constitution or Section 2 of Article 1 of the California Constitution.

Because the Court has construed both section 76120 and BP 8000 as prohibiting only speech that is unprotected by the First Amendment, *supra,* BP 8000 does not violate section 66301.

### J. Whether the Unconstitutional Provisions of BP 8000 are Severable

■ Defendant asks that the Court sever any unconstitutional provisions of BP 8000 from the rest of the policy. Opp'n at 25:21–23. Severability of a state regulation is a matter of state law. *Leavitt v. Jane L.,* 518 U.S. 137, 138, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996). Under California law, three criteria exist for severability: "the invalid provision must be grammatically, functionally, and volitional-

ly separable." *Legislature of the State of Cal. v. Eu,* 54 Cal.3d 492, 535, 286 Cal. Rptr. 283, 816 P.2d 1309 (1991) [hereinafter *Legislature of Cal.*]. That is, the provisions must be "grammatically severed without affecting the operation of the remaining" provision. *Id.* Second, severance must "not affect the function or operation of the remaining provisions." *Id.* And, finally, the Court must find that the drafters of BP 8000 "would have adopted the remaining provisions had they foreseen the success of [Plaintiffs'] challenge." *Id.* "Severance of particular provisions is permissible despite the absence of a formal severance clause." *Id.* at 534–35, 286 Cal. Rptr. 283, 816 P.2d 1309.

■ The Court finds that several of the sections found to be impermissible meet all the requirements for severance. Section V.A.7[ (d) ]( [iv] ), section XIII. L.1(h), and the words "without limitation" in section XIII.L.1 may be severed without affecting, grammatically or functionally, the rest of the scheme for denying students reservations for the prime areas on campus. The Court also finds that the District would have adopted the scheme even in the absence of these provisions. Additionally, sections XII.A.1–3, 5 and XII.B can be severed grammatically and functionally. The ban on advertising of illegal materials, section XII.A.4 remains functional. The Court finds that the District would have adopted the ban on advertising illegal materials even in the absence of the ban on other commercial advertising. The bans on postings and distribution of writings inside buildings, in parking lots, and on windshields, sections IX.C.1, IX.C.2, and VIII.B.3(a)(3), are similarly severable without affecting the rest of the regulations governing postings and writings. The Court finds that the District would have adopted the rest of the regula-

tions in the absence of these particular provisions.

Next, the Court finds that several other provisions, while grammatically severable, leave such a void in the policy that they are not functionally and volitionally severable. The blanket exceptions for activities of District contractors, sections I.B.2 and X.D, are grammatically severable. But without them, it is entirely unclear what rules, if any, apply to the actions of the contractors who utilize District property. Because of this void, the Court cannot find that the policy is functional or that the District would have adopted it.

The impermissible prior restraints regarding use of the grounds and interiors on the District's campuses are similarly troublesome. The following sentences are grammatically severable: "The decision whether to allow use of the GROUNDS lies solely within the discretion of the President," Motion Ex. 1 at § V.B.2; "No amplification of any type shall be permitted within Quad A or B or the Grounds without approval by the President," *id.* at § V.B.4(a)(1); "The use of such [interior] areas lies solely within the discretion of each College President and/or Chancellor ...," *id.* at § V.C.1; "The decision to allow use of the interior of any SOCCCD property lies solely under the discretion of the President," *id.* at § V.C.2; and "Amplification may only be permitted within such areas as may be authorized by the President such as the gym, auditoriums, and large meeting halls," *id.* at § V.C.3(a). These sections are not functionally severable as it is entirely unclear how the reservation system for the grounds and interior of buildings would work in their absence. The Court could alternatively sever all provisions relating to the grounds and interior of buildings. But this would leave a greater void, as it would be unclear what access students have to those areas at all. Because of these voids, the Court also

finds that the provisions are not volitionally severable.

Lastly, the Court must address the remaining content-based provisions purporting to implement section 76120 that the Court has not to be severable. Although many of these provisions are grammatically severable, they are not functionally or volitionally severable. Implementing section 76120 appears to be the District's primary purpose in enacting BP 8000. Severing these sections would leave the District without any scheme to administer BP 8000. Accordingly, the Court cannot find that the policy is functional in their absence or that the District would have adopted the policy at all.

With the exception of section XIII. L.1(h), the ban on music concerts likely to create an unreasonable risk of harm, and the unlimited discretion allowed the campus presidents in that same section, the Court has not addressed the provisions of BP 8000 applicable to the general public and Civic Center Act users. Section XIII. L.1(h) and the words "without limitation" in section XII.L.1 are severed from those provisions. The rest remain in effect.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that a number of provisions in Board Policy 8000 violate Plaintiffs' First Amendment rights. Because many of the unconstitutional provisions are not functionally or volitionally severable from the rest of the policy, all provisions in BP 8000 applicable to students must be struck down in their entirety. With the exception of section XIII.L.1(h) and the words "without limitation" in section XIII.L.1, which are struck and severed, the provisions applicable to the general public and Civic Center Act users remain in effect. Plaintiffs' Motion for Summary Adjudication is hereby

GRANTED IN PART and DENIED IN PART.